UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

Eastern District of Kentucky
F I L E D
JUN 1 6 2005
AT PIKEVILLE
LESLIE G. WHITMER
CLERK, U.S. DISTRICT COURT

CIVIL ACTION NO. 04-289-GWU

STEPHEN A. HALL, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Hall

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a

2

reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

Hall

symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be

4

considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and

5

Hall

analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

"framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Stephen A. Hall, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of borderline intellectual functioning and substance induced depression and anxiety. (Tr. 19). Nevertheless, based in part on the testimony of a vocational expert (VE) and a medical expert (ME), the ALJ determined that the plaintiff retained the residual functional capacity to return to his past relevant work as a custodian and, therefore, was not entitled to benefits. (Tr. 22-5). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to medium level exertion, and had a "moderately limited" ability to understand, remember, and carry out detailed instructions, maintain attention

concentration for extended periods, and respond appropriately to changes in the work setting. (Tr. 479). The ALJ also specified that the individual was able to understand and recall material, maintain mental effort needed to complete tasks, relate to others, and handle routine situations. (Id.). The VE responded that such a person could perform Mr. Hall's past relevant work as a custodian, and also identified other jobs that he could perform and gave the numbers in which they existed in the regional and national economies. (Tr. 480).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Although Mr. Hall alleged disability due to physical problems including back pain and headaches (Tr. 466, 468, 470), the medical evidence failed to show any specific abnormalities (e.g., Tr. 246, 266-9, 315-18, 409-10), and state agency physicians who reviewed a portion of the record concluded that Mr. Hall did not have a "severe" physical impairment (Tr. 275, 305, 340). The plaintiff does not challenge this finding on appeal.

The plaintiff's sole issue on appeal is the ALJ failed to follow the Commissioner's regulations at 20 C. F. R. Section 416.912(e)(1), which provides that the Commissioner will "recontact [a] treating physician or psychologist or other medical source" to seek additional information if the report from the source "contains a conflict or ambiguity that must be resolved, the report does not contain all the

Hall

necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." The plaintiff specifically points to an undated report from a clinical social worker, whose name he gives as "Jay Brandon" (the signature is only semi-legible), which indicates that Mr. Hall was being treated for anxiety and depression, was on "several medications," and "would not be a good candidate for job training at this time." (Tr. 438). The plaintiff concedes that a clinical social worker is not an "acceptable medical source" under the Commissioner's regulations. However, he points out that 20 C.F.R. Section 416.913(d)(1) includes "therapists" as "other medical sources" whose opinion will be considered by the Commissioner, and that the regulation also provides for recontacting these other sources.

However, the Court agrees with the Commissioner that any error in the present case was harmless. There were several one-time consultative examinations, including one conducted by Dr. Eric Johnson, a psychologist, in March, 2000. (Tr. 270-274). Dr. Johnson obtained a full-scale IQ score of 84, and achievement testing showed high school level reading and sixth-grade arithmetic. (Tr. 273). In terms of functional restrictions, Dr. Johnson noted that the plaintiff was working at the time and was "obviously" able to make occupational adjustments, and was apparently able to function adequately with supervisors. (Tr. 274). His concentration and memory were fair and he was able to understand work rules and

Hall

understand, remember, and carry out simple and detailed instructions. (Id.). Another psychologist, Phil Pack, conducted further IQ testing in November, 2001 and obtained a full-scale score of 79, along with high school level reading on WRAT testing. (Tr. 313). He diagnosed only borderline intellectual functioning to low average intelligence (Tr. 314), noting that the plaintiff was pleasant, friendly, and personable. (Tr. 312, 314).

Notes from the Mountain Comprehensive Care Center (MCCC) indicate that Mr. Hall was self-referred in January, 2002 for anger and emotional problems; also mentioned was a history of substance abuse. (Tr. 374). The patient described feelings that other people were trying to harm him. (Tr. 364). Notes by the staff psychiatrist are unclear in terms of diagnoses, although medications including Depakote, Zyprexa, Abilify, and Zoloft were prescribed. (Tr. 361-2, 412). Other sources at MCCC diagnosed cannabis dependence, opioid abuse, possible cannabis induced psychotic disorder, physical abuse of child-victim, sexual abuse of child-victim, and antisocial personality disorder. (Tr. 369). No functional restrictions are given, although there is an ambiguous notation on January 9, 2003 that hospitalization was "discussed" or recommended. (Tr. 412-13). However, the plaintiff testified shortly thereafter at the hearing before the ALJ on January 24, 2003, approximately two weeks later, and did not disclose a psychiatric hospitalization.

10

Dr. Johnson conducted a second consultative examination of the plaintiff on January 27, 2003 (Tr. 429). The plaintiff stated that he was being treated at MCCC for depression and anxiety, and the staff psychiatrist thought he had a bipolar disorder. (Id.). He described feelings of paranoia and depression "all the time," but Dr. Johnson noted that on the date of evaluation his mood was euthymic. (Tr. 438). Other information provided by Mr. Hall indicated that he could take care of his personal needs, and that he spent his time walking railroad tracks and gathering ginseng. (Tr. 430-1). Dr. Johnson found that he was able to do simple calculations, and was aware of recent news events. (Tr. 431). The plaintiff's scores on intelligence and achievement testing were lower than those obtained by Dr. Johnson three years earlier. This time, his full-scale IQ was 74 rather than 84, and he read at a sixth-grade level and performed arithmetic at a third grade level. (Tr. 432). Dr. Johnson stated that Mr. Hall gave up on some testing without really trying, but he did not find any evidence of malingering. (Id.). He could not explain the difference in scores otherwise, however, except by speculating that neurological factors could be involved. (Id.). He diagnosed a dysthymic disorder, polysubstance abuse in sustained full remission by patient report, a history of being a victim of physical abuse and neglect, "rule out" neurocognitive disorder, a personality disorder, and borderline intellectual functioning by current test results. (Id.). He prepared a mental

11

Hall

residual functional capacity assessment indicating that the plaintiff had a "seriously limited but not precluded" ability in many areas. (Tr. 434-6).

The ALJ sought the opinion of a medical expert (ME), Dr. Stuart Gitlow, apparently a psychiatrist. (Tr. 442). Dr. Gitlow's summary of the evidence noted a significant history of polysubstance abuse and, while the patient reported remission on several occasions, made a report of significant substance abuse in February, 2002 (Tr. 427). Dr. Gitlow also felt it was significant that the MCCC notes contained references to a history of inhalant use that included use of "Freon, gasoline, lighter fluid, and glue," and in addition, a January 27, 2002 intake form indicated that Mr. Hall used marijuana daily and inhaled opiates such as Lorcet several times a month. (Tr. 364, 366, 372, 442). Dr. Gitlow felt that the history of polysubstance abuse was significant and, while there were several reports of remission, there were also reports of significant substance abuse in January, 2002 and there were no laboratory screening tests or other objective evidence of sobriety during the time period. (Tr. 442). Dr. Gitlow noted that the use of organic solvents as inhalants was a typical cause of significant neurotoxicity which could include development of intellectual deficits as well as perceptual disturbances. (Id.). He concluded that there was insufficient evidence to establish the presence of any mental impairments other than substance use disorder or substance induced difficulties. (Id.).

Hall

Under the circumstances, the ALJ could reasonably have relied upon the ME's testimony. Under Public Law 104-121, disability benefits are not available on the basis of alcohol or drug dependence. The ALJ did give the plaintiff benefit of the doubt in finding some restrictions as assessed by state agency sources. (E.g., Tr. 336-9, 355-7). However, under the circumstances of this case, obtaining an additional opinion from an "other source" such as a licensed clinical social worker would have been futile, since the ALJ still could have relied upon the opinion of an acceptable reviewing source, Dr. Gitlow.

The decision will be affirmed.

This the ___15___ day of June, 2005.

G. WIX UNTHANK
SENIOR JUDGE

13